UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DENNIS LONNIE ALFRED WARD et al.,

        Plaintiffs,                   Case No. 1:19-cv-0612

v.                                       Honorable Paul L. Maloney

KATHY THARP et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by state prisoners under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiffs' complaint for failure to state a claim.

### Discussion

    **I.**    **Factual allegations**

Plaintiffs Dennis Lonnie Alfred Ward, Walter Neal, Aundra Beckem, Jamal Umar Buchanan, Samaj Ramone Lawson, Sandy Holt Jr., and Dandree Black are seven state prisoners presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland

Correctional Facility (LCF), the Muskegon Correctional Facility (MCF), and the G. Robert Cotton Correctional Facility (JCF). The events about which they complain, however, occurred prior to their incarceration. Plaintiffs sue Muskegon County Executive Kathy Tharp, the County of Muskegon, and Muskegon County Clerk Nancy A. Waters. Plaintiffs' complaint was originally filed in the Muskegon County Circuit Court on June 6, 2019, but was removed to this Court by Defendants on July 29, 2019. Defendants filed a motion to dismiss (ECF No. 3) on August 5, 2019.

Plaintiffs allege that they were all convicted and sentenced in the Muskegon County Circuit Court between 2001 and 2012. Plaintiffs state that they were indigent and were each represented by appointed counsel. Plaintiffs claim that the County of Muskegon failed in its obligation to adequately fund, train, and supervise the court-appointed attorneys who defended Plaintiffs in their criminal prosecutions. Each of the Plaintiffs state that they were represented by multiple attorneys during the course of their criminal cases, that the attorneys were changed without the notice or consent of the Plaintiffs, and that the representation provided was inconsistent and inadequate.

Plaintiffs claim that Defendants' conduct violated their rights under the Sixth and Fourteenth Amendments, as well as under state law. Plaintiffs seek declaratory and injunctive relief, as well as "any other relief . . . including monetary damage awards and out of pocket expenses for the costs of this litigation, including court costs." (ECF No. 1-1, PageID.17.)

### II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In their motion to dismiss, Defendants state that Plaintiffs' claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiffs' complaint challenges the fact or duration of their incarceration, it must be dismissed. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, and (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

In addition, to the extent Plaintiffs seek injunctive, declaratory, and monetary relief for alleged violations of Constitutional rights related to their convictions, their claims are barred by *Heck*, 512 U.S. at 486-87, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner

4

shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

As noted by Defendants in their motion to dismiss, Plaintiffs' claims in this case clearly relate to the validity of their convictions because they allege that they did not receive adequate legal representation in their criminal cases. None of the Plaintiffs have alleged that they have had their convictions reversed or invalidated. Therefore, Plaintiffs' claims are barred under *Heck* until their criminal convictions have been invalidated.

Moreover, as noted by Defendants, Plaintiffs' claims are barred by the applicable statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2) (eff. June 12, 2018) (previously § 600.5805(10)); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved

5

party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

Plaintiffs' complaint is untimely. They assert claims arising between 2001 and 2012. Plaintiffs had reason to know of the "harms" done to them at the time they occurred. Hence, their claims accrued between 2001 and 2012. However, they did not file their complaint until June 6, 2019, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

In their motion to dismiss, Defendants also correctly assert that, even if Plaintiffs' claims were not time-barred, Plaintiffs have failed to state a cognizable claim against Defendants because, at the time that Plaintiffs were being prosecuted, the indigent defense program was administered by the chief judge of the circuit court in the county where the offense occurred, rather than directly by the county or by county officials. In support of this claim, Defendants cite *Floyd v. Cty of Kent*, 454 F. App'x 493 (6th Cir. 2012). In *Floyd*, the Sixth Circuit addressed the plaintiff's claim against Kent County as follows:

> Floyd also did not state a claim for relief against Kent County for perceived deficiencies in providing counsel to indigent defendants. At the time of Floyd's sentencing, Michigan law placed responsibility for appointing an attorney for an

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

indigent accused on the chief judge of the circuit court in the county where the offense occurred, and not directly on the county or its executive officials. Mich. Comp. Laws § 775.16 (1999). The statute provided that appointed defense attorneys were paid from the county treasury, but only after the chief judge of the circuit court in that county certified that the appointed attorney rendered professional services and was entitled to receive reasonable compensation for the services performed. *Id.* Floyd did not allege any facts in his complaint to show that an official policy, custom or practice of Kent County was the "moving force" behind any asserted violation of his constitutional rights by the circuit court. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Miller v. Sanilac Cnty.,* 606 F.3d 240, 254-55 (6th Cir. 2010).

*Id.* at 499. Because none of the named Defendants in this case were charged with assigning indigent defense counsel during the pertinent time period, Plaintiffs fail to state a claim against them.[2]

Defendants further contend that Plaintiffs' claims for injunctive relief are moot because the Michigan Legislature has since passed Public Act 93 of 2013, the "Michigan Indigent Defense Commission Act," which specifically addresses the concerns raised by Plaintiffs in their complaint and requires minimum standards for the local delivery of indigent criminal defense services. *See* Mich. Comp. Laws § 780.985-991. Injunctive relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-46 (1974). A court should assume that, absent an

---

[2] Defendants also point out that Defendant Kathy Tharp was improperly named by Plaintiffs as the Muskegon County Executive during the pertinent time period. Defendants state that Ms. Tharp was actually the executive assistant to the County Executive, which is a secretarial position.

official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-96.

The "Michigan Indigent Defense Commission Act" provides for the creation of the Michigan Indigent Defense Commission (MIDC):

> (1) The MIDC shall establish minimum standards, rules, and procedures to effectuate the following:
>
> (a) The delivery of indigent criminal defense services must be independent of the judiciary but ensure that the judges of this state are permitted and encouraged to contribute information and advice concerning that delivery of indigent criminal defense services.
>
> (b) If the caseload is sufficiently high, indigent criminal defense services may consist of both an indigent criminal defender office and the active participation of other members of the state bar.
>
> (c) Trial courts shall assure that each criminal defendant is advised of his or her right to counsel. All adults, except those appearing with retained counsel or those who have made an informed waiver of counsel, must be screened for eligibility under this act, and counsel must be assigned as soon as an indigent adult is determined to be eligible for indigent criminal defense services.
>
> (2) The MIDC shall implement minimum standards, rules, and procedures to guarantee the right of indigent defendants to the assistance of counsel as provided under amendment VI of the Constitution of the United States and section 20 of article I of the state constitution of 1963. In establishing minimum standards, rules, and procedures, the MIDC shall adhere to the following principles:
>
> (a) Defense counsel is provided sufficient time and a space where attorney-client confidentiality is safeguarded for meetings with defense counsel's client.
>
> (b) Defense counsel's workload is controlled to permit effective representation. Economic disincentives or incentives that impair defense counsel's ability to provide effective representation must be avoided. The MIDC may develop workload controls to enhance defense counsel's ability to provide effective representation.
>
> (c) Defense counsel's ability, training, and experience match the nature and complexity of the case to which he or she is appointed.
>
> (d) The same defense counsel continuously represents and personally appears at every court appearance throughout the pendency of the case. However, indigent

criminal defense systems may exempt ministerial, nonsubstantive tasks, and hearings from this prescription.

(e) Indigent criminal defense systems employ only defense counsel who have attended continuing legal education relevant to counsels' indigent defense clients.

(f) Indigent criminal defense systems systematically review defense counsel at the local level for efficiency and for effective representation according to MIDC standards.

(3) The following requirements apply to the application for, and appointment of, indigent criminal defense services under this act:

(a) A preliminary inquiry regarding, and the determination of, the indigency of any defendant, including a determination regarding whether a defendant is partially indigent, for purposes of this act must be made as determined by the indigent criminal defense system not later than at the defendant's first appearance in court. The determination may be reviewed by the indigent criminal defense system at any other stage of the proceedings. In determining whether a defendant is entitled to the appointment of counsel, the indigent criminal defense system shall consider whether the defendant is indigent and the extent of his or her ability to pay. Factors to be considered include, but are not limited to, income or funds from employment or any other source, including personal public assistance, to which the defendant is entitled, property owned by the defendant or in which he or she has an economic interest, outstanding obligations, the number and ages of the defendant's dependents, employment and job training history, and his or her level of education. A trial court may play a role in this determination as part of any indigent criminal defense system's compliance plan under the direction and supervision of the supreme court, consistent with section 4 of article VI of the state constitution of 1963. If an indigent criminal defense system determines that a defendant is partially indigent, the indigent criminal defense system shall determine the amount of money the defendant must contribute to his or her defense. An indigent criminal defense system's determination regarding the amount of money a partially indigent defendant must contribute to his or her defense is subject to judicial review. Nothing in this act prevents a court from making a determination of indigency for any purpose consistent with article VI of the state constitution of 1963.

(b) A defendant is considered to be indigent if he or she is unable, without substantial financial hardship to himself or herself or to his or her dependents, to obtain competent, qualified legal representation on his or her own. Substantial financial hardship is rebuttably presumed if the defendant receives personal public assistance, including under the food assistance program, temporary assistance for needy families, Medicaid, or disability insurance, resides in public housing, or earns an income less than 140% of the federal poverty guideline. A defendant is also rebuttably presumed to have a substantial financial hardship if he or she is currently

serving a sentence in a correctional institution or is receiving residential treatment in a mental health or substance abuse facility.

(c) A defendant not falling below the presumptive thresholds described in subdivision (b) must be subjected to a more rigorous screening process to determine if his or her particular circumstances, including the seriousness of the charges being faced, his or her monthly expenses, and local private counsel rates would result in a substantial hardship if he or she were required to retain private counsel.

(d) A determination that a defendant is partially indigent may only be made if the indigent criminal defense system determines that a defendant is not fully indigent. An indigent criminal defense system that determines a defendant is not fully indigent but may be partially indigent must utilize the screening process under subdivision (c). The provisions of subdivision (e) apply to a partially indigent defendant.

(e) The MIDC shall promulgate objective standards for indigent criminal defense systems to determine whether a defendant is indigent or partially indigent. These standards must include availability of prompt judicial review, under the direction and supervision of the supreme court, if the indigent criminal defense system is making the determination regarding a defendant's indigency or partial indigency.

(f) The MIDC shall promulgate objective standards for indigent criminal defense systems to determine the amount a partially indigent defendant must contribute to his or her defense. The standards must include availability of prompt judicial review, under the direction and supervision of the supreme court, if the indigent criminal defense system is making the determination regarding how much a partially indigent defendant must contribute to his or her defense.

(g) A defendant is responsible for applying for indigent defense counsel and for establishing his or her indigency and eligibility for appointed counsel under this act. Any oral or written statements made by the defendant in or for use in the criminal proceeding and material to the issue of his or her indigency must be made under oath or an equivalent affirmation.

(4) The MIDC shall establish standards for trainers and organizations conducting training that receive MIDC funds for training and education. The standards established under this subsection must require that the MIDC analyze the quality of the training, and must require that the effectiveness of the training be capable of being measured and validated.

(5) An indigent criminal defense system may include in its compliance plan a request that the MIDC serve as a clearinghouse for experts and investigators. If an indigent criminal defense system makes a request under this subsection, the MIDC may develop and operate a system for determining the need and availability for an expert or investigator in individual cases.

Mich. Comp. Laws Ann. § 780.991.  The Court concludes that Plaintiffs' claims for injunctive relief are moot because the creation of the MIDC forecloses the possibility that an ongoing official policy or practice urging unconstitutional conduct of the sort alleged by Plaintiffs.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants' motion to dismiss (ECF No. 3) will be granted and Plaintiffs' complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).

In addition, the Court will deny Plaintiffs' motion for appointment of counsel (ECF No. 7) as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiffs appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiffs are barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If they are barred, they will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  October 22, 2019         /s/ Paul L. Maloney
                                 Paul L. Maloney
                                 United States District Judge